**Mae McEWEN, Plaintiff–Appellant,**

v.

**DELTA AIR LINES, INC.,
Defendant–Appellee.**

**No. 90–1249.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1990.

Decided Nov. 28, 1990.

James E. Pancratz, Chicago, Ill., for plaintiff-appellant.

Mary A. O'Callaghan, Max G. Brittain, Jr., Marcia E. Goodman, Mary G. Fitzpatrick, Kovar, Nelson, Brittain, Sledz & Morris, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

While working for Delta Air Lines as a flight attendant, Mae McEwen injured her back. For more than a year Delta kept her on the payroll. McEwen, whose base was Chicago, sought a desk job in the south or west. Delta offered her two temporary jobs in Chicago; she refused them. Then Delta offered her a job in Atlanta opening mail to the carrier's frequent flyer program. She balked again, contending that the salary was too low and that she was unable to do even such sedentary work. Delta let her go. She filed this suit (which Delta removed to federal court under the diversity jurisdiction), contending that Delta's decision was an anticipatory retaliation for her imminent request for adjudication of her pending claim for workers' compensation benefits. Under Illinois law, which governs this case, the victim of retaliation may obtain compensatory and punitive damages. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); see also *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

The district judge concluded that McEwen established a "very weak *prima facie* case" by showing that Delta fired her after it became aware that she might seek adjudication of a claim for workers' compensation benefits. This showing, the judge thought, was "easily overcome" by Delta's demonstration that it released her because she was unable to perform her job as flight attendant and was unwilling to accept the job in Atlanta. Once the employer advances a legitimate reason, the judge wrote, the employee must show that the reason is pretextual. McEwen had not done so, and the judge accordingly granted summary judgment in Delta's favor. McEwen contends in this court that Illinois has explicitly rejected in retaliatory discharge cases such a sequential inquiry, modeled after Title VII of the Civil Rights Act of 1964. *Netzel v. United Parcel Service, Inc.*, 181 Ill.App.3d 808, 130 Ill.Dec. 879, 537 N.E.2d 1348 (1st Dist.1989). In Illinois, according to McEwen, a prima facie case gives the plaintiff access to a jury, whether the case be weak or strong.

Whether state law governs this aspect of the case is a nice question. State law provides the burden of proof (more accurately, the risk of nonpersuasion) when it supplies the rule of decision. *Palmer v. Hoffman*, 318 U.S. 109, 116–17, 63 S.Ct. 477, 481–82, 87 L.Ed. 645 (1943); *Cities Service Oil Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939). But the sequential inquiry employed in Title VII cases affects the order and burden of raising issues and producing evidence rather than the risk of nonpersuasion once evidence has been brought forward. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). It is a "sensible, orderly way to evaluate the evidence in light of common experience". *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Although it identifies circumstances under which particular items become important, it is in the end no more

substantive than is the order in which parties present their evidence at trial; all of the substance comes from Title VII (or, here, the common law of Illinois).

A rule structuring the sequence of proof often affects the relation between judge and jury. Having isolated a question as dispositive, the court may grant summary judgment if a jury could resolve that question only one way. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Erie* does not require a federal court to employ the state's rules on the allocation of issues between judge and jury. *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); see *Abernathy v. Superior Hardwoods, Inc.,* 704 F.2d 963, 970–71 (7th Cir.1983). If Illinois assigned all retaliatory discharge cases to judges, federal courts still would need to empanel juries, given the seventh amendment. If Illinois courts lacked the authority to award summary judgment in retaliatory discharge cases, so that all cases were tried to juries, federal courts still could grant summary judgment under Fed. R.Civ.P. 56. Not every outcome-determinative rule in state court is mirrored in federal court. Only when the federal rules are silent need the federal court ask whether to use state rules as templates. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury. So instead of asking whether particular evidence, viewed in isolation, did or did not add up to a prima facie case, we inquire whether a verdict for McEwen could be sustained on the entire record. It could not be.

Illinois does not require employers to retain persons who cannot or will not work. Illinois seeks to ensure that persons entitled to workers' compensation benefits will obtain them without hindrance from their employers. *Kelsay,* which established retaliatory discharge as tortious in Illinois, demonstrates the state's concerns. An employee injured her thumb and returned to work the same day. She was as able to work after the injury as before, but the employer fired her for seeking compensation for the injury. *Kelsay* holds that the employer may not present the employee with a choice between her job and her legal entitlement to compensation, which may dissuade employees from receiving what is theirs under state law. When the injured person cannot work at all, however, the prospect of discharge does not discourage an application for benefits. The employee has nothing to lose; whether or not she applies, there will be no job.

Workers' compensation systems are designed to replace income lost as the result of injury. The premise of these systems is that totally disabled persons will be removed from the payroll and partially disabled persons will land in less remunerative jobs. Workers' compensation payments replace some of the income thus lost. Changes attributable to the disability cannot be characterized as "retaliation"; they are assumptions from which the rules proceed. McEwen has not cited, and we could not find, any case (in Illinois or any other state) holding that employers must retain totally disabled workers, or even that they must offer injured persons alternative employment commensurate with their reduced capabilities. Illinois allows employers to act on the basis of their employees' physical disabilities; it is only the request for benefits that state law puts off limits as a ground of decision. Cases such as *Slover v. Brown,* 140 Ill.App.3d 618, 94 Ill.Dec. 856, 488 N.E.2d 1103 (5th Dist.1986), show that employers need not attempt to accommodate their workers. Slover was injured, and while he was unable to perform his job he was laid off and replaced. After recovering he asked to be reinstated, and the employer declined. The court concluded that state law allows an employer to fire an injured person who cannot do the work, explaining: "Causality does not exist if the basis for discharge is valid and nonpretextual. Thus, an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury." 94 Ill.Dec. at 858, 488 N.E.2d

at 1105 (citations omitted). See also, e.g., *Marin v. American Meat Packing Co.*, 204 Ill.App.3d 302, 149 Ill.Dec. 818, 562 N.E.2d 282 (1st Dist.1990); *Motsch v. Pine Roofing Co.*, 178 Ill.App.3d 169, 127 Ill.Dec. 383, 533 N.E.2d 1 (1st Dist.1988); *Wayne v. Exxon Coal USA, Inc.*, 157 Ill.App.3d 514, 109 Ill.Dec. 600, 510 N.E.2d 468 (5th Dist. 1987); *Lewis v. Zachary Confections Co.*, 153 Ill.App.3d 311, 106 Ill.Dec. 296, 505 N.E.2d 1087 (1st Dist.1987).

McEwen was not put to a choice between her benefits and her job. She told Delta (as she tells us) that her injury prevents her from performing not only the duties of a flight attendant but also the duties of the desk job she was offered. Her injury, followed by her decision not even to try the job in Atlanta, caused her discharge. So although we accept McEwen's contention that Delta knew not only that she was about to demand an adjudication of her claim for benefits but also that she was unlikely to accept the proffered job, we agree with the district judge that she has not offered evidence from which a jury could find that this demand caused her discharge. Inability to work was a sufficient condition of Delta's action, precluding recovery under state law.

AFFIRMED.