**Donald EMERY, Plaintiff–Appellant,**

v.

**CONTINENTAL GENERAL TIRE, INC., Defendant–Appellee.**

No. 00–3297.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 30, 2001.

Decided Feb. 16, 2001.

Before Hon. FLAUM, Chief Judge, Hon. RIPPLE and Hon. ILANA DIAMOND ROVNER, Circuit Judges.

## ORDER

Donald Emery was terminated from his position with Continental General Tire, Inc. following an extended period of medical leave. Mr. Emery contends that Continental terminated him in retaliation for the workers' compensation claim he filed. He therefore brought this retaliatory discharge lawsuit under Illinois law. The district court entered summary judgment in favor of Continental. We affirm the judgment of the district court.

### I

Since 1985, Mr. Emery was employed at Continental, where he worked almost exclusively as a tire builder. In November 1997 he began to experience sharp pain in both of his arms, and his family doctor referred him to Dr. Michael Davis, an orthopedic surgeon. Dr. Davis performed arthroscopic surgery in April 1998 to repair a torn rotator cuff in Mr. Emery's left shoulder. Dr. Davis then referred Mr. Emery to Dr. Terrence Glennon, a physician specializing in physical medicine and rehabilitation.

Dr. Glennon met with Mr. Emery on three separate occasions in late 1998 to monitor his progress and coordinate his physical therapy. By December Dr. Glennon concluded that Mr. Emery's rehabilitation had leveled off and that he had

reached maximum medical improvement. Based in part on a functional capacity evaluation for Mr. Emery from his therapy center, Dr. Glennon released Mr. Emery to return to work, with a restriction on overhead lifting and regular lifting that exceeded 40 pounds.

In February 1999 Continental wrote Mr. Emery's attorney that work was available for Mr. Emery within the restrictions imposed by Dr. Glennon. Mr. Emery returned to his regular work as a tire builder on February 19, a Friday. He worked that day on a "tire machine," where he built five tires. At some point during the day, Mr. Emery experienced pain when he lifted something called an "inner liner" that he and a coworker estimated weighed more than 40 pounds. He visited the nurses' station several times that day complaining of shoulder pain, and he ultimately turned in his time card and left work before the end of his shift.

The following Monday, February 22, Mr. Emery did not return to work because his pain had not improved. Fearing that he reinjured his shoulder, Mr. Emery visited a hospital, and his lawyer faxed a letter to Continental stating that Mr. Emery's regular duty job was "too strenuous" for him and asking "if there was work that [Mr. Emery] can do without further injuring himself." Continental responded by stating that Mr. Emery would be terminated if he did not report for work the following day, February 23. Mr. Emery did not go to work on the 23rd, and Continental then terminated him by letter, explaining that he failed to report for scheduled work. Later that week, on February 26, Mr. Emery saw his family physician and re-

ceived an off-duty slip that retroactively covered February 22–26.

Claiming that he had been terminated in retaliation for filing a claim under the Illinois Workers' Compensation Act (IWCA), 820 ILCS 305/1 *et seq.*, Mr. Emery initiated this retaliatory discharge lawsuit in Illinois state court, seeking actual and punitive damages from Continental. After removing the case to federal court, Continental filed a motion for summary judgment.

The district court determined that Mr. Emery could not establish the necessary elements of a retaliation claim directly, and so it employed the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Applying that framework, the district court explained that Mr. Emery could not set forth a prima facie case because he could not show that employees outside the protected class were treated more favorably. The district court went on to note that Continental offered a legitimate reason for terminating Mr. Emery–his failure to report to work on February 23. The district court granted Continental's summary judgment motion,[1] and Mr. Emery appeals.

## II

We review de novo a district court's decision to grant summary judgment. *See Sharp v. United Airlines, Inc.*, No. 00–1875, 2001 WL 4988 (7th Cir. Jan.2, 2001). In reviewing the record, we draw all inferences in favor of the nonmoving party, and summary judgment is proper if there are no genuine issues of material

---

1. On appeal, Mr. Emery suggests that the district court improperly granted summary judgment based on issues beyond the scope of Continental's motion. We disagree; Continental's pleadings in the district court, and specifically its memorandum in support of summary judgment, adequately addressed the elements required to establish a retaliation claim.

fact and if the moving party is entitled to judgment as a matter of law. *See id.*

■ In general, employees may be terminated at the will of the employer. *See Sweat v. Peabody Coal Co.,* 94 F.3d 301, 304 (7th Cir.1996). Illinois law, however, recognizes an employee's claim of retaliatory discharge if the employee has been terminated for filing a claim under the IWCA. *See Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 358 (1978). To succeed on a retaliatory discharge claim under Illinois law, an employee must establish three elements: "(1) that he was an employee before the injury; (2) that he exercised a right guaranteed by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mechanical Devices Co.,* 184 Ill.2d 328, 235 Ill.Dec. 54, 704 N.E.2d 403, 406 (1998). *See also Sweat,* 94 F.3d at 304.

■ As Continental notes, however, Illinois law does not require an employer to retain or retrain an employee who is unwilling or unable to work. *See Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992); *see also McEwen v. Delta Air Lines, Inc.,* 919 F.2d 58, 60 (7th Cir.1990). Additionally, Illinois employers need not accommodate injured employees, even if the injury is work-related. *See McEwen,* 919 F.2d at 60.

■ Illinois courts treat a retaliatory discharge action as a traditional tort claim, and so have rejected the *McDonnell Douglas* analytical framework. *See Clemons,* 235 Ill.Dec. 54, 704 N.E.2d at 407–08; *see also Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 767 n. 4 (7th Cir.1994). Federal courts that hear these claims, however, may use *McDonnell Douglas's* burden-shifting approach. *See Bourbon v. Kmart Corp.,* 223 F.3d 469, 473 (7th Cir.2000); *Hiatt,* 26 F.3d at 767. Under the *McDonnell Douglas* framework, a plaintiff lacking direct evidence of discrimination may shift the burden of proof to the defendant by establishing a prima facie case of discrimination if the plaintiff was (1) in a protected class, (2) meeting the employer's legitimate work expectations, (3) suffered an adverse employment action, and (4) employees outside the protected class were treated more favorably. *See Bourbon,* 223 F.3d at 473; *Hiatt,* 26 F.3d at 767–68. The burden then shifts to the defendant to provide a legitimate reason for the adverse employment action; once this burden is satisfied, the plaintiff must then show that the proffered reasons for termination are merely pretext for discrimination. *See Hiatt,* 26 F.3d at 767–68.

■ On appeal, Mr. Emery asserts that Continental failed to provide a job for him that satisfied the medical restrictions identified by his doctor. Other than Mr. Emery's own suggestion that he was required to lift objects weighing over 40 pounds, however, the record does not support this argument. In fact, two coworkers told Mr. Emery that he should not be lifting the heavy items by himself. In his pretrial deposition, Mr. Emery claimed that Continental required him to lift certain things in contravention of his medical restrictions in order to perform at the expected rate. He offered no evidence, however, that Continental required him to work at the same pace as other employees or that Continental required him to do heavy lifting. Further, Continental correctly responds that Illinois law does not require employers to accommodate injured employees by retraining them or by providing work within their medical limitations. *See Hartlein,* 176 Ill.Dec. 22, 601 N.E.2d at 728; *see also McEwen,* 919 F.2d at 60.

Mr. Emery next challenges the district court's conclusion that he could not prove the fourth prong of *McDonnell Douglas* – that employees outside the protected class were treated more favorably than he was. "Employees outside the protected class" refers to injured employees who did not file workers' compensation claims. *See Hiatt,* 26 F.3d at 770. Mr. Emery focuses solely on a statement from a personnel manager at Continental that the company has a general policy to accommodate workers' compensation injuries, but offers no evidence regarding the treatment of employees who had *not* filed workers' compensation claims. He cannot, therefore, prove the fourth prong as required to establish a prima facie case under by *McDonnell Douglas.*

■ Finally, Mr. Emery asserts that the legitimate reasons Continental offered to explain his termination were pretextual. In order for Mr. Emery to establish pretext, he must provide evidence that Continental did not honestly believe the reasons it offered for his termination. *See Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1012 (7th Cir.2000). Pretext means more than bad business judgment or unusual managerial decisions; " 'pretext' means deceit used to cover ones' tracks." *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 684 (7th Cir.2000). Mr. Emery suggests that Continental gave contradictory reasons for his termination (refusal to perform the work available and failure to report to work on February 23), and therefore the reasons offered must have been pretextual. The record as a whole, however, makes clear that Mr. Emery was on notice that failure to report to work on February 23 would demonstrate his refusal to perform the work to which Continental assigned him. Mr. Emery marshaled no evidence before the district court that Continental did not honestly believe that it fired him for refusing to work. He, therefore, failed to establish pretext.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED