# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 10, 2001 Session

## JOHNNY MCGOWAN v. JIMMY FARR II, ET AL.

**Appeal from the Chancery Court for Morgan County**
**No. 00-49     Frank V. Williams, III, Chancellor**

### FILED AUGUST 30, 2001

### No. E2000-02519-COA-R3-CV

Johnny McGowan ("Plaintiff"), an inmate at the Brushy Mountain Correctional Complex filed this lawsuit against the various defendants alleging violations of federal and state law after medication was confiscated from his cell. Plaintiff improperly filed a grievance which was returned to him with instructions on how to properly process same. Instead of refiling the grievance in accordance with proper procedure, Plaintiff filed this lawsuit. The Trial Court granted summary judgment to the defendants. We affirm, concluding that Plaintiff failed to exhaust his administrative remedies which bars all of his claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Johnny McGowan, Petros, Tennessee, *pro se* Appellant.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Dawn Jordan, Assistant Attorney General, Nashville, Tennessee, for the Appellees Kevin Allen, Anita Pope Cook, Larry Brown, Eddie Duncan, and Ronald Koons.

K.O. Herston, Knoxville, Tennessee, for the Appellee Jimmy Farr, II.

## OPINION

## Background

This is a lawsuit filed by Plaintiff, currently an inmate at Brushy Mountain Correctional Complex ("Complex") in Petros, Tennessee. Plaintiff, who is proceeding in forma pauperis, alleges that on February 21, 2000, several of the defendants conducted a routine search of his cell while he was in the shower. During the search, a large plastic bag containing prescription medication was discovered. While the bag had Plaintiff's name and number on it, it contained a different type of medication than what was listed on the label. The bag and its contents were then confiscated "because the medication in the bag was not in its original container."[1] Once it was determined that the medication found in the bag was prescribed for Plaintiff, the defendants claim the medication was returned to Plaintiff that same afternoon. Plaintiff claims, however, that some of the medication was missing.

Approximately seventeen days prior to the events mentioned above, a memorandum was placed on the bulletin boards at the Complex. The memorandum was addressed to "All Inmates" and was from Defendant Anita Pope, Grievance Chairperson, and was issued through David Mills, the Warden at the Complex. Both Mr. Mills and Ms. Pope initialed the memorandum. The memorandum states:

REGARDING: Grievance Procedures

Beginning this date, all grievances which are improperly processed by being sent to the Warden first, will be returned to the grievant for proper processing. Sending the grievance to any person other than the grievance chairperson, delays the timely processing of the grievance. Please remember, grievances are to be placed in the grievance box in your unit by the grievant unless the grievance is considered an emergency. If the grievant feels that the grievance is an emergency then he may hand the grievance to a member of the unit team.

On February 21, 2000, Plaintiff attempted to file a grievance with regard to the confiscation of his medication the previous day. Contrary to the express prohibitions in the above memorandum, Plaintiff submitted the grievance directly to the Warden. Four days later, the grievance was returned to Plaintiff because he did not follow the proper procedure. Plaintiff was instructed on how to properly file the grievance in accordance with the memorandum. Plaintiff did not pursue the grievance any further. The Affidavit of Defendant Anita Pope states:

---

[1] The material facts are undisputed and are taken in large part from both Plaintiff's and Defendants' statements of undisputed facts submitted in support of and in opposition to Defendants' motions for summary judgment.

Allegations of staff misconduct are grievable through established policies and procedures. Inmate McGowan did fill out an inmate grievance form making such an allegation, but he did not submit the grievance as per those established policies and procedures. Instead of placing the form in the grievance box, or handing the forms to a member of the unit team, inmate McGowan sent the grievance form directly to the warden. On February 25, 2000, Inmate McGowan's grievance was returned to him with a memorandum informing him that he needs to follow the proper procedures if he wants to file a grievance. . . . Inmate McGowan has made no attempt to submit the above referenced grievance properly.

Plaintiff then filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging various federal and state constitutional violations as well as violations "of the laws of the state of Tennessee" centering around the confiscation of his medication and Defendant Pope's failing to process the grievance. On the same day that Plaintiff filed the grievance (February 21, 2000), a disciplinary report was filed against him which alleged that Plaintiff assaulted a guard. Plaintiff was found guilty of the assault by the Disciplinary Board on April 3, 2000. Plaintiff admits that he did not appeal this decision and it has not otherwise been overturned. In his Complaint, however, Plaintiff alleges that the claimed assault never occurred and the allegations were a fabrication made against him in retaliation for his filing the grievance.

Defendants filed motions for summary judgment. The Trial Court granted the motions, stated that "[a]fter reviewing the case file, and the pleadings therein . . . this Court is of the opinion that the Motion . . . is well taken, and is therefore GRANTED."

**Discussion**

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled

-3-

to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

Both federal and state law require prisoners to exhaust their administrative remedies prior to filing an action in a court of law. Tenn. Code Ann. § 41-21-806 provides, in relevant part:

(a) An inmate who files a claim that is subject to review by the grievance committee established by the department shall file with the court an affidavit stating the date that the grievance was filed and the date the final decision was received by the inmate with a copy of the final decision from the grievance committee.

* * * *

(c) If a claim is filed before the grievance procedure is complete, the court shall stay the proceeding with respect to the claim for a period not to exceed ninety (90) days to permit completion of the grievance procedure.

This statute "serves to help ensure that all administrative remedies have been exhausted prior to the exercise of judicial review." *Sweatt v. Campbell*, No. 02A01-9808-CV-00227, 1999 WL 95978 at *3 (Tenn. Ct. App. Feb. 25, 1999). *See also Allen v. Lloyd*, No. M1999-01739-COA-R3-CV, 2000 WL 775085 at *3 (Tenn. Ct. App. June 16, 2000)("Tenn. Code Ann. § 41-21-806 creates a procedural requirement which was designed to further the goal of making sure that an inmate who is filing in forma pauperis has pursued his administrative remedies to a conclusion before enlisting the aid of the courts in resolving a problem . . . .").

Federal law also requires exhaustion of administrative remedies before filing a lawsuit under *any* federal law. As stated by this Court in *Sweatt*:

Section 1997e (a) of Title 42 to the United States Code, as amended by the Prison Litigation Reform Act of 1996, establishes that "*[n]o action shall be brought* with respect to prison conditions *under . . . any . . . Federal law*, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C.S. § 1997e (a) (Supp. 1998) (emphasis added). "In light of the plain mandatory language of the statute regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, . . . prisoners filing . . . cases involving prison conditions must allege and show that they have exhausted *all* available state administrative remedies." *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998) (emphasis added). *See also White v. McGinnis*, 131 F.3d 593 (6th Cir.1997) (holding that a district court's *sua sponte* dismissal of a prisoner's civil rights suit, which sought declaratory and injunctive relief and compensatory and punitive damages against several individual defendants, was proper where the prisoner filed an administrative grievance regarding his claims, but did not pursue an administrative appeal of the denial of the grievance).

*Sweatt v. Campbell*, 1999 WL 95978 at * 3.

In the present case, the Inmate Grievance Procedures ("Procedures") specifically provide that grievances which are improperly completed or contain insufficient information for processing shall be returned to the inmate with instructions how to properly complete the grievance. The Procedures also provide several levels of administrative review of grievances. In addition, the February 4th memorandum specifically addresses the impropriety of serving grievances directly on the Warden and unequivocally states that if this happens, the grievance "will be returned to the grievant for proper processing." Plaintiff's grievance was returned to him for failure to follow this procedure and it was explained to him what he needed to do to properly file the grievance. Instead of filing the grievance in accordance with the proper procedure, he voluntarily chose not to pursue his grievance any further and to file this lawsuit. Plaintiff's calling his grievance an "emergency" does not invalidate the need to file the grievance properly.[2] The Procedures provide for the expedited handling of emergency grievances, but do not abolish proper procedures for filing such grievances. Based on these facts, we conclude as a matter of law that Plaintiff failed to properly exhaust his administrative remedies and therefore his claims regarding the confiscation of his medicine were properly dismissed under both federal and state law.[3]

Next, we address Plaintiff's claim that Ms. Pope violated federal and state law by improperly refusing to process his grievance. The Procedures define what is grievable to include, among other things, "any single behavior or action toward an inmate by staff . . . or any condition or incident within the department or institution which personally affects the inmate complainant." We believe that the alleged conduct of Ms. Pope falls squarely within what is considered grievable. Since no grievance was filed with regard to Ms. Pope's alleged actions, Plaintiff failed to exhaust his administrative remedies prior to filing suit against Ms. Pope and this claim, therefore, properly was dismissed. Based on this conclusion, we pretermit the issue of whether Plaintiff states a cause of action against Ms. Pope, even assuming his conclusory allegations are true. *See, e.g., Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335 (Table), 2000 WL 799760 (6th Cir. 2000)(unpublished), which involved a lawsuit by an inmate at the Lebanon Correctional Institute. Rejecting the plaintiff's federal constitutional claim, the *Overholt* Court pointed out that the "defendants were not obligated to 'properly' respond to [plaintiff's] grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation." *Overholt*, 2000 WL 799760 at **3. *See also Reid v. Lutche*, No. M1997-00229-COA-R3-CV, 2001 WL 55783 at *4 (Tenn. Ct. App. Jan. 24, 2001)("Because prisoners have no constitutional stake in grievance procedures … violations of grievance procedures do not affect a prisoner's constitutional rights." (citations omitted).

---

[2] We need not decide whether Plaintiff's grievance was actually an "emergency". We note, however, that section 501.01 F. 2. of the Procedures provides that the "determination that a grievance is not an emergency may be appealed through normal grievance procedures."

[3] Plaintiff does not argue that refiling the grievance would have been futile. Such an argument has been flatly rejected under federal law. *See Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000).

As to Plaintiff's retaliation claim, the Procedures specifically state that such claims are grievable. In particular, section 501.01 C. 6. states that:

> The good faith use of, or good faith participation in, the grievance process will not result in formal or informal reprisals against an inmate. An inmate shall be entitled to pursue, through the grievance procedure, a complaint that a reprisal occurred as the result of the filing of a prior grievance.

Since no grievance was ever filed with respect to the retaliation claim, we likewise hold that this claim properly was dismissed for Plaintiff's failure to exhaust his administrative remedies.

Because of our conclusion that Plaintiff failed to exhaust his administrative remedies, all remaining issues raised by the parties are pretermitted.

## Conclusion

The judgment of the Trial Court is affirmed. This case is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion, and for collection of costs below. Costs of appeal are taxed to the Appellant Johnny McGowan and his surety, if any.

_____
D. MICHAEL SWINEY